# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2045-17T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.H.,

     Defendant-Appellant,

and

S.D.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.L.H., Jr.,

     a Minor.

_____

Submitted October 9, 2018 – Decided November 2, 2018

Before Judges Messano and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FG-03-0065-17.

Joseph E. Krakora, Public Defender, attorney for appellant (James D. O'Kelly, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Hannah F. Edman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Melissa R. Vance, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant J.H.[1] appeals from the December 21, 2017 judgment of guardianship that terminated his parental rights to his son, J.L.H., Jr., born May 2016. Defendant's wife, S.D., J.L.H., Jr.'s mother, gave a voluntary identified surrender of her parental rights to her son's current non-relative caregiver, and is not a party to this appeal. Defendant contends that plaintiff New Jersey Division of Child Protection and Permanency (Division) failed to prove prong three of the best interests standard embodied in N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. The Law Guardian supported termination before the

---

[1] Pursuant to Rule 1:38-3(d)(12), we use initials to protect the confidentiality of the participants in these proceedings.

A-2045-17T4

trial court and, on appeal, joins the Division in urging us to affirm. Having considered the parties' arguments in light of the record and applicable legal standards, we affirm.

N.J.S.A. 30:4C-15.1(a)(1) to -15.1(a)(4) requires the Division to petition for termination of parental rights on the grounds of the "best interests of the child" if the following standards are met:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

On May 31, 2017, the Division filed a verified complaint to terminate defendant's parental rights and award the Division guardianship of J.L.H., Jr.

A-2045-17T4

We will not recite in detail the circumstances that led to the filing of the guardianship complaint, which began with the emergency removal of J.L.H., Jr. shortly after he was born suffering from methadone exposure[2] while both S.D. and defendant were incarcerated at the Atlantic and Burlington County jails, respectively.  As a result, the Division was granted care, custody, and supervision of J.L.H., Jr., pursuant to N.J.S.A. 9:6-8.21 and 30:4C-12.  In order to arrange placement, the Division contacted defendant's mother, who ultimately adopted defendant's other two children, then one- and two-years-old, but the paternal grandmother (PGM) indicated that she did not have space and was unable to care for a newborn in addition to defendant's other two children.  The Division also contacted defendant's father and brother.  Although the paternal grandfather (PGF) expressed an interest in being the caregiver, he had recently relocated to Florida with defendant's brother and his family, thus necessitating processing the placement under the Interstate Compact on the Placement of Children (ICPC).  N.J.S.A. 9:23-5.[3]  Additionally, the Division contacted F.F.,

_____

[2]  Hospital records revealed that J.L.H., Jr.'s meconium, or first stool, tested positive for methadone and marijuana.

[3]  The ICPC requires New Jersey to notify the out-of-state child welfare authorities if children are removed from New Jersey and placed in an out-of-state home so that they can "be the eyes and ears of [the Division] in that

a paternal aunt who had adopted S.D.'s third child, born in 2008 from a different relationship.[4] F.F. expressed interest in being J.L.H., Jr.'s caregiver, but needed a few days to speak to her husband before she could commit. However, when presented with F.F. as a placement option, defendant expressly rejected her. Given the unavailability of family members for an immediate placement, when J.L.H., Jr. was released from the hospital on June 7, 2016, the Division placed him in a non-relative resource home. He was placed in his current resource home on October 18, 2016, and has remained there since.

Judge Mark P. Tarantino conducted the guardianship trial on December 21, 2017. At the trial, Division caseworker Sidney Winters testified about the history of the case and the Division's involvement with defendant, detailing his history of substance abuse, mental health issues, incarcerations, and unstable housing. She also recounted the Division's efforts to provide services to help defendant correct these circumstances and assess placement options. Division expert Brian S. Eig, Psy.D., testified about the psychological evaluation he conducted of defendant, and the bonding evaluations he conducted between

---

particular state." N.J. Div. of Youth & Family Servs. v. T.M., 399 N.J. Super. 453, 468 (App. Div. 2008) (alteration in original).

[4] Defendant also had a third child from a different relationship, but that child was not in defendant's care.

J.L.H., Jr., defendant, and the resource parent. Defendant, a veteran who had previously been deployed to Afghanistan, testified on his own behalf, objecting to the termination of his parental rights. In the alternative, defendant expressed a preference for J.L.H., Jr. to be adopted by a family member. In addition, numerous documentary exhibits were admitted into evidence.

We incorporate by reference the factual findings and legal conclusions in Judge Tarantino's December 21, 2017 oral opinion following the guardianship trial and only recite Judge Tarantino's key findings supporting his decision. Preliminarily, Judge Tarantino found Dr. Eig "to be a credible witness," and his uncontroverted testimony "fair" and "very believable." Likewise, the judge found Winters to be a credible witness, and described her uncontroverted testimony as "one of the best witness testimonies that the [c]ourt has seen in many years." In contrast, the judge found that defendant "embellish[ed] when he testified" and "was not a credible witness in the sense that he was answering questions the way he wanted to answer them" and "actually bolstered the [Division's] case as opposed to" his own. In interpreting defendant's overall testimony, the judge determined that "the best plan" offered by defendant for J.L.H., Jr.'s care would be to "pass [J.L.H., Jr.] off, as he did with the other two

children, to his mother, and then . . . be in a sense the big brother," rather than a father.

The judge carefully reviewed the services provided by the Division, including certified alcohol and drug counselor (CADC) assessments, substance abuse treatment programs, psychological evaluations, random urine screens, visitations, and transportation. The judge determined that other than "one service that he completed," defendant "has not engaged in any services." According to the judge, defendant merely provided "excuses," which, even if believed, demonstrated defendant's "self-destructive" actions and were not indicative of "someone who [was] ready to be serious about being a parent and having reunification with a young child."

The judge considered Winters' testimony regarding the Division's assessment of family members for J.L.H., Jr.'s placement. According to Winters, in a June 14, 2016 rule out letter, the Division notified the PGM that J.L.H., Jr. would not be placed in her home based on her anticipated adoption of defendant's other two children,[5] and the fact that she did "not have the space [in her home for J.L.H., Jr.] at th[e] time." The letter notified the PGM of her right

---

[5] At the time, the PGM had adopted one child and was in the process of adopting the other.

A-2045-17T4

to "request a review of the decision" if she disagreed, and that "[i]f there [was] a change in [her] circumstances and [she] would like to be reconsidered as a potential caregiver for [J.L.H., Jr.]," she should contact the Division. The letter also advised of "the possibility that termination of parental rights may occur if the child[] remain[ed] in the Division's care for more than six months, and that the child[] may be placed for adoption." The PGM neither requested a review nor contacted the Division regarding a change in circumstances. As to the PGF, on January 17, 2017, the ICPC placement was denied because the PGF "had a change of heart" and "withdrew from the placement process." In a May 3, 2017 rule out letter similar to the one provided to the PGM, the Division notified the PGF of the decision and advised him of his rights. The PGF neither requested a review nor contacted the Division regarding a change in circumstances.

The judge discussed the circumstances of J.L.H., Jr.'s birth, and recounted the progress made while placed with the resource parent, who was committed to adoption rather than the kinship legal guardianship (KLG) option explained to her by Winters. Acknowledging J.L.H., Jr.'s "special needs," and "neurological concerns," the judge observed that J.L.H., Jr. "has flourished and has done well" in the resource parent's care. The judge noted that defendant's preference for J.L.H., Jr. to be in the care of a family member failed to "account [for] the fact

that the resource parent has provided excellent care and nurturing to the child thus far."

In considering Dr. Eig's psychological evaluation of defendant, the judge noted that Dr. Eig confirmed defendant's "history of substance abuse, including alcohol, marijuana, heroin[,] and cocaine." The judge recounted Dr. Eig's "diagnostic impressions" that defendant was "bipolar," and "suffer[ed] from [post-traumatic stress disorder,]" "attention deficit disorder, hyperactivity disorder, antisocial personality, and . . . stimulation disorders from opioids and cocaine." According to the judge, "Dr. Eig did not support [defendant] continuing to be a parent," and "noted that [defendant's] parenting fitness was not likely to improve, even if [defendant] were to engage in some of the [recommended] services."

As to the bonding evaluation with defendant and J.L.H., Jr., the judge accepted Dr. Eig's testimony that although defendant "did have a positive interaction with the child," there was no "significant psychological attachment or psychological bond," and "it [was] unlikely that [J.L.H., Jr.] view[ed] [defendant] as his psychological parent." Accordingly, "[J.L.H., Jr.] would be at [a] relatively low risk of suffering severe and enduring psychological or emotional harm if his relationship with [defendant] was permanently ended."

A-2045-17T4

The judge contrasted Dr. Eig's "bonding evaluation with the resource parent, noting positive interactions with the child, that the child sought support and reassurance from the resource parent, and had a secure attachment to the resource parent." Accordingly, Dr. Eig concluded that "if the bond or the relationship between the resource parent and [J.L.H., Jr. was] terminated, there would be a high risk for psychological and emotional harm to" J.L.H., Jr. Further, according to Dr. Eig, "the [resource] parent would be able to ameliorate any harm to the child if [defendant's] parental rights were terminated."

Describing the evidence presented by the Division as "extremely compelling and convincing, with really no inconsistencies," and citing N.J. Div. of Youth & Family Servs. v. A.R., 405 N.J. Super. 418 (App. Div. 2009), and In re Guardianship of K.H.O., 161 N.J. 337, 347-63 (1999), the judge concluded the Division had proven, "by clear and convincing evidence," all four prongs of the "best interests" test codified at N.J.S.A. 30:4C-15.1(a).

On appeal, defendant only challenges the judge's findings with respect to the third prong of the statute, and does not contest the judge's adverse findings on the remaining prongs. We thus confine our analysis to the third prong, although we note parenthetically our recognition that the remaining prongs were amply proven by the Division.

10

Regarding prong three, the judge was "more th[a]n satisfied" that "the Division . . . made consistent, thorough, professional, diligent efforts to provide services to correct the circumstances of this removal." The judge "considered alternatives to termination of parental rights," but was "satisfied" that "[t]here really [were] no viable alternatives." According to the judge, the resource parent was advised of KLG, but adoption "seem[ed] to make the most sense from the [c]ourt's view." Further,

> [t]he Division, . . . right off the bat, did investigate and let two different grandparents know that they could have placement, and for various reasons[,] they did not achieve placement, but . . . this situation has been known to these grandparents for a year-and-a-half, right from the beginning of the case. And so . . . [t]here's only really one alternative left, which is termination of parental rights.

The judge entered a memorializing order, and this appeal followed.

Our scope of review on appeals from orders terminating parental rights is limited. In such cases, we will generally uphold the trial court's findings, so long as they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). Indeed, we must give substantial deference to the family court judge's special expertise and opportunity to have observed the witnesses firsthand and evaluate their credibility. Id. at 552-53. Thus, a termination decision should only be reversed

11

or altered on appeal if the trial court's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). Even where the parents allege "error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom," deference must be afforded unless the judge "went so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (first quoting In re Guardianship of J.T., 269 N.J. Super. 172, 189 (App. Div. 1993); and then quoting C.B. Snyder Realty, Inc. v. BMW of N. Am. Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).

Guided by these standards, we conclude that Judge Tarantino's factual findings are amply supported by the credible evidence in the record, and his legal conclusions are unassailable. Defendant urges us to reject the judge's determination that "alternatives to termination of [his] parental rights" were explored "when scant evaluation of possible placements was performed." According to defendant, the Division failed to satisfy its "statutory burden to use its best efforts to facilitate [J.L.H., Jr.'s] placement" with the PGM, or F.F. Without question, the Division is not permitted "to embark on a course set for termination of parental rights . . . without at least first exploring available

12

relative placements." N.J. Div. of Youth & Family Servs. v. K.L.W., 419 N.J. Super. 568, 580 (App. Div. 2011). To that end, "[t]he Division must perform a reasonable investigation of such relatives that is fair, but also sensitive to the passage of time[,] and the child's critical need for finality and permanency." N.J. Div. of Youth & Family Servs. v. J.S., 433 N.J. Super. 69, 87 (App. Div. 2013).

While "there is no presumption in favor of placement with relatives," K.L.W., 419 N.J. Super. at 580, after "complet[ing] an assessment of each interested relative's ability to provide the care and support, including placement, required by the child," id. at 578 (quoting N.J.S.A. 30:4C-12.1), if the Division "determines that the relative is unwilling or unable to assume the care of the child, the [Division] shall not be required to re-evaluate the relative." N.J.S.A. 30:4C-12.1(b). The Division shall however inform the relative in writing of:

> (1) the reasons for the department's determination;
>
> (2) the responsibility of the relative to inform the department if there is a change in the circumstances upon which the determination was made;
>
> (3) the possibility that termination of parental rights may occur if the child remains in resource family care for more than six months; and
>
> (4) the right to seek review by the department of such determination.
>
> [Ibid.]

A-2045-17T4

Here, we are convinced that the Division satisfied its statutory obligation and the judge correctly concluded that prong three of the best interests standard was met by clear and convincing evidence. The PGM was properly assessed and ruled out without appeal, and defendant objected to F.F., who, in any event, was not a "relative" the Division was obligated to investigate under the applicable regulations. See N.J.A.C. 10:120A-1.3 (defining "relative" for purposes of N.J.S.A. 30:4C-12.1, and limiting some relationships "to those having a history of being active in planning for the child's future").

"It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support the decision to terminate parental rights." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012). Here, the judge reviewed the evidence presented at trial, made detailed findings as to each prong of N.J.S.A. 30:4C-15.1(a), and concluded that the Division met, by clear and convincing evidence, all of the legal requirements for a judgment of guardianship. The judge's opinion tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a) and comports with applicable case law. See, e.g., F.M., 211 N.J. at 447-54; N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 103-07 (2008); K.H.O., 161 N.J. at 347-63; In re Guardianship of D.M.H., 161 N.J. 365,

375-93 (1999); <u>N.J. Div. of Youth & Family Servs. v. A.W.</u>, 103 N.J. 591, 604-11 (1986). We thus affirm substantially for the reasons Judge Tarantino expressed in his comprehensive and well-reasoned oral opinion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2045-17T4